PEOPLE v BUSBY

1. STATUTES—CONSTRUCTION—VALIDITY—LEGISLATIVE PURPOSE.

The Court of Appeals is bound to construe a statute so as to give it validity and reasonable operation, if possible; the Court must look to the purpose of the enactment and be guided thereby without attempting to rewrite it or to question the legislative wisdom (MCLA 335.318[1] [b]).

2. DRUGS AND NARCOTICS—STATUTES—CONTROLLED SUBSTANCES—CONSTRUCTION—QUANTITATIVE ANALYSIS—LEGISLATIVE INTENT.

Quantitative analysis is not required before criminal possession of the drugs or substances allegedly possessed by a defendant may be established; the Legislature has clearly and unambiguously stated its intent to control certain proscribed substances without regard to quantity and it would be completely illogical to hold that it was the legislative intent that the words "having a potential for abuse" mean that in each prosecution that a determination must be made as to whether or not a particular amount has "a potential for abuse"; had the Legislature intended that quantitative analysis be required in those cases in which a derivative of barbituric acid or a salt of the derivative of barbituric acid was contained in a substance, such a requirement would have been included in a subsection of the statute, where it is required as to eight different substances (MCLA 335.318[1][b], 335.318[1][d]).

3. CONSTITUTIONAL LAW—DUE PROCESS—STATUTES—CONSTRUCTION—VAGUENESS.

The Controlled Substances Act of 1971 does not violate due process because of vagueness or ambiguity by the mere fact that a defendant rearranges the statute for argument in place of reading it as written; vagueness disappears with any com-

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Statutes §§ 196–203.
[2] 25 Am Jur 2d, Drugs, Narcotics and Poisons §§ 7–12.
  Constitutionality of statute regulating sale of poisons, drugs, or medicines. 54 ALR 730.
[3] 16 Am Jur 2d, Constitutional Law § 381.

mon sense reading of the statute in its entirety (MCLA 335.301 *et seq.).*

Appeal from Wayne, George W. Crockett, Jr., J. Submitted Division 1 October 16, 1974, at Detroit. (Docket No. 17302.) Decided November 6, 1974.

Johnny Busby was charged with violation of the Controlled Substances Act of 1971. From denial of his motion to quash the information defendant appeals by leave granted. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellant Department, and *Ronald Weitzman,* Assistant Prosecuting Attorney, for the people.

*Raymond E. Willis* (Defenders' Office—Legal Aid and Defender Association of Detroit), for defendant.

Before: BRENNAN, P. J., and T. M. BURNS and CARLAND,* JJ.

CARLAND, J. Following a preliminary examination, the defendant, Johnny Busby, was charged in a one count information with violating the Controlled Substances Act of 1971 on February 18, 1973. Specifically, the defendant was charged with knowingly or intentionally possessing one capsule each of amobarbital and secobarbital contrary to the provisions of MCLA 335.341(4)(b); MSA 18.1070(41)(4)(b).

There is before this Court the issue of the con-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

struction or interpretation of MCLA 335.318(1)(b); MSA 18.1070(18)(1)(b) which provides as follows:

"(b) Unless listed in another schedule, any material, compound, mixture or preparation which contains any quantity of the following substances having a potential for abuse associated with a depressant effect on the central nervous system:

"Any substance which contains any quantity of a derivative of barbituric acid, or any salt of a derivative of barbituric acid, except those substances which are specifically listed in other schedules."

A motion to quash the information was filed with and argued before the trial court. The defendant contended that while there had been a qualitative analysis of the capsules here involved, that a quantitative analysis was required by the statute in order to determine whether or not the amount contained in the capsules had the "potential for abuse" before a violation of the statute could be shown. Put another way, the defendant argues that it is "quantity" which must have "potential for abuse" and not the "substance". The defendant further argues that the statute in question is vague and therefore violative of defendant's due process rights. The trial judge, on May 24, 1973, denied the motion on the basis that it involved a controlling question of the law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may timely advance the ultimate termination of the litigation. The trial judge scheduled the case for trial and failed to stay the proceedings. On June 29, 1973, this Court granted defendant's motion for immediate consideration, leave to appeal and stay of proceedings.

In our attempt to construe, we note that the authorities cited by the defendant and those which

our own research has revealed are all distinguishable from the instant case because of the difference in the controlling facts. Here we are not dealing with "a minute residue" as in *People v Harrington,* 33 Mich App 548; 190 NW2d 343 (1971), nor are we confronted, as was the Court in *Beutler v State,* 88 Nev 707; 504 P2d 699 (1972), with a quantity described therein as "useless for either sale or consumption". In *People v Leal,* 64 Cal 2d 504, 512; 50 Cal Rptr 777; 413 P2d 665 (1966), it was similarly held:

"Hence the possession of a minute crystaline residue of narcotic useless for either sale or consumption, as *[People v] Sullivan,* [234 Cal App 2d 562; 44 Cal Rptr 524 (1965)], points out, does not constitute sufficient evidence in itself to sustain a conviction."

In essence, these courts have held that what has been forbidden by the statutes involved is the possession of quantities of the prescribed substances capable of being sold or consumed.

In the case at bar, the defendant was found in possession of substances proscribed by the statute which regardless of the quantity was contained in capsules which with their contents are capable of being sold through simple transfer and may be consumed through the simple process of ingestion.

On appeal, the defendant raises the following questions:

1. Does the statute require proof of the quantity of derivative of barbituric acid or salt of a derivative of barbituric acid before criminal possession of such drugs may be established?

2. Is the statute vague and therefore violative of the due process clause of the United States and Michigan Constitutions?

Without question, we have no other duty to

perform than to construe the statute here before us as written, without attempt to rewrite or to question the legislative wisdom. In so doing, we must look to the purpose of the enactment and be guided thereby. We are bound, if possible, to so construe the statute as to give it validity and reasonable operation.

The defendant argues that quantitative analysis is required by the express wording of the first paragraph of the statute and would have us interpret the language therein as though it read "any quantity * * * having a potential for abuse, etc." To so construe would be to ignore the precepts of construction by which we are bound.

The intent of the Legislature is clearly expressed in the entitlement of 1971 PA 196 (Controlled Substances Act of 1971) and in § 1 thereof.

> "An act to regulate the control, manufacture, production, compounding, prescribing, disposition, dispensing, sale, possession, use and administering of controlled substances * * * .
> "Sec. 1 This act shall be known and may be cited as the 'controlled substances act of 1971'."

In clear and unambiguous language the Legislature has stated its intent to control certain proscribed substances among them being the substances which the defendant allegedly possessed. No mention is made of the quantity or amount, again demonstrating that the intent of the act is to control substances regardless of quantity. There is no comma after the words "any quantity" and therefore the clause "having a potential for abuse associated with a depressant effect upon the central nervous system" is adjective and modifies the clause "any quantity of the following substances".

It seems to be completely illogical to hold that it

was the legislative intent that the words "having a potential for abuse" mean that in each prosecution that a determination must be made as to whether or not a particular amount has "a potential for abuse".

Further, the second paragraph of § 18(1)(b) again demonstrates the legislative intent as to the substances here involved through the use of the words "any substance which contains any quantity". It would seem that had the Legislature intended that quantitative analysis be required in those cases in which a derivative of barbituric acid or a salt of the derivative of barbituric acid was contained in a substance as here involved, such a requirement would have been included in (d) of § 18(1) where it is required as to eight different substances.

We therefore hold that quantitative analysis is not required before criminal possession of the drugs or substances allegedly possessed by the defendant may be established.

As to the question of vagueness raised by the defendant, we accept the statement of the law as enunciated in *Connally v General Construction Company,* 269 US 385; 46 S Ct 126; 70 L Ed 322 (1926), and cited in *People v Austin,* 301 Mich 456, 463; 3 NW2d 841 (1942). However, we feel compelled to hold that vagueness, if any there is, disappears with any common sense reading of the statute in its entirety. The mere fact that defendant rearranges the statute for argument in place of reading it as written does not render it violative of due process because of vagueness or ambiguity. The statute does not violate the due process clauses of the United States or Michigan Constitutions.

Affirmed.

All concurred.