PEOPLE v ZEEGERS

1. Criminal Law—Jury—Deliberation of Jury—Communications
with Jury—Prejudice.

Communications or instructions to the jury, after the jury has
retired for deliberations, out of court and in the absence of the
parties or their counsel, are grounds for a new trial regardless
of whether the communications or instructions were prejudi-
cial; therefore, a defendant's conviction will be reversed where
a court officer responded to a juror's question while the jury
was deliberating, and the response amounted to an instruction
on the law.

2. Criminal Law—Entrapment—Predisposition of Defendant.

Entrapment occurs when the government's involvement in crimi-
nal activities goes beyond the mere offering of an opportunity
and the conduct is of a kind that could induce or instigate the
commission of a crime by one not ready and willing to commit
it, regardless of the character or propensities of the particular
person induced; the character and predisposition of the particu-
lar defendant are irrelevant and may not be considered in
reaching a decision on entrapment.

3. Criminal Law—Entrapment—Question of Law—Jury Question.

The question whether entrapment has occurred is one of law for
the trial judge to decide; it may not be answered by the jury.

Appeal from Recorder's Court of Detroit, Susan
D. Borman, J. Submitted Division 1 December 11,
1974, at Detroit. (Docket No. 19151.) Decided May
30, 1975. Leave to appeal applied for.

John R. Zeegers was convicted of unlawful deliv-
ery of morphine sulphate. Defendant appeals. Re-
versed and remanded for a new trial.

References for Points in Headnotes
[1] 75 Am Jur 2d, Trial § 999 *et seq.*
[2, 3] 21 Am Jur 2d, Criminal Law § 143.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people.

*Burdick & Fink,* for defendant.

Before: BRONSON, P. J., and McGREGOR, and CAR-LAND,* JJ.

PER CURIAM. On October 29, 1973, defendant-appellant, John Zeegers, was found guilty by jury verdict of unlawful delivery of morphine sulphate, contrary to MCLA 335.341(1)(a); MSA 18.1070(41)(1)(a). He was sentenced on November 16, 1973, receiving a $1,000 fine and five years probation, the first six months to be served in the Detroit House of Correction. A motion for new trial was argued on November 20, 1973, and denied by written order. Zeegers appeals from that order, asserting two errors.

At trial certain tape recordings of conversations between Zeegers and an undercover police agent were admitted into evidence and played for the jury. It appears that after the jury had retired to consider a verdict and while they were deliberating, one juror asked the court officer, "Should we just consider the tapes, or all of the evidence?" The court officer, without the approval or knowledge of court or counsel, instructed him to consider "all of the evidence".

The Supreme Court has repeatedly held that the "sanctity of the jury room" must be protected from such intrusions as occurred here, *Zaitzeff v*

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

*Raschke,* 387 Mich 577, 579; 198 NW2d 309 (1972), so that the right to a trial by jury is safeguarded "from any suspicion the jury may be tampered with while deliberating". *People v Kangas,* 366 Mich 201, 208; 113 NW2d 865 (1962). See also, *People v Heard,* 388 Mich 182; 200 NW2d 73 (1972).

The people argue that even if error occurred here, Zeegers must nevertheless demonstrate prejudice before he is to be accorded a new trial. Such a contention is at variance with the so-called "Wisconsin rule", adopted in *Kangas, supra,* and reaffirmed in *Zaitzeff, supra,* and *Heard, supra.* The *Kangas* Court, in announcing its agreement with the Wisconsin rule, restated it as follows:

" * * * [C]ommunications or instructions by the court to the jury, after they have retired for deliberations, out of court and in the absence of the parties or their counsel, are grounds for a new trial, regardless of whether such communications or instructions were prejudicial." *Kangas, supra,* at 206–207.

The facts of the instant case even more strongly support reversal since it was not the trial judge but a court officer who here communicated with the jury. Moreover, the communication amounted to an instruction on the law to be applied by the jury, a task clearly beyond the responsibilities of the court officer. Since this case falls squarely within the test enunciated in *Kangas, supra,* Zeegers is entitled to a new trial.

The other allegation of error merits discussion since the question presented will no doubt arise again on retrial. Zeegers urged as his main defense that he was entrapped into committing the offense by illegal police conduct.

The trial judge gave the following instruction in explaining the entrapment defense to the jury:

"Now, John Zeegers has admitted that he committed the crime charged. But is offering a defense on the theory of entrapment. Now, the prosecution must prove beyond a reasonable doubt that the defendant was not entrapped into delivery or possession of morphine sulphate. The purpose of the entrapment defense is not to show that the defendant is innocent of the crime charged. In fact, before he can assert that defense he must admit commission of the crime in order to assert the defense.

"The purpose of the entrapment defense is to prohibit unlawful governmental activity in instigating crime. So, first of all, the persons involved must be agents of the government or the state, or acting as agents of the state. If the person doing the instigating has no connection with the state at the time he instigates then there is no entrapment and the defendant cannot assert the defense of entrapment. So there must be a government agent or somebody working as a government agent.

"Secondly, the agents involved in a criminal activity must go beyond the mere offering of the opportunity to commit the crime.

"And, third, the government's conduct must be of the kind that could induce or instigate the commission of a crime by one not ready or willing to commit the crime. *Because if you find that the defendant was ready and willing to commit the crime then there would be no entrapment."* (Emphasis added.)

Such an instruction runs afoul of the objective test of entrapment adopted recently by the Supreme Court in *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973). *Turner* controls here since it was decided a few weeks prior to the commencement of Zeegers' trial. The proper test to be applied is set forth in *Turner* as follows (quoting from Justice Stewart's dissent in *United States v*

*Russell,* 411 US 423, 445; 93 S Ct 1637; 36 L Ed 2d 366 [1973]):

" 'But when the agents' involvement in criminal activities goes beyond the mere offering of such an opportunity, and when their conduct is of a kind that could induce or instigate the commission of a crime by one not ready and willing to commit it, then—*regardless of the character or propensities of the particular person induced*—I think entrapment has occurred.' " (Emphasis supplied.) 390 Mich 7, 21.

The italicized language makes it clear that any inquiry concerning the character and predisposition of the *particular* defendant is irrelevant. Instead the trial judge must consider the police conduct in relation to a *hypothetical* defendant— one "not ready and willing to commit" the crime charged. If the crime would have been committed by such a person, then the police conduct constitutes entrapment. If the crime would not have been committed by such person, then no entrapment has occurred. In either event, whether the particular defendant actually charged with the offense is ready and willing to commit the crime cannot be considered in reaching a decision on entrapment under the objective approach. The trial judge accordingly erred in instructing the jury to consider Zeegers' willingness to commit the crime.

We hasten to add that the question whether entrapment occurred is one of law for the trial judge to decide. It must not be answered by the jury. *People v Habel (On Rehearing),* 53 Mich App 399; 220 NW2d 74 (1974). On retrial, therefore, no instruction on entrapment will be necessary.

The order appealed from is reversed and the case is remanded for new trial.

Reversed.

JUDGE CARLAND did not participate due to illness.