PEOPLE V HEARD

1. CRIMINAL LAW—JURY—CONTACT WITH JURY—EXHIBITS.
   Trial court committed reversible error by entering the jury room
   without permission of counsel or request by the jury to deliver
   to the jury certain exhibits where in a criminal case defense
   counsel strenuously objected to this procedure when the judge
   returned.

2. CRIMINAL   LAW—TRIAL—WITNESSES—JURY—QUESTIONING   WIT-
   NESSES.
   Ruling of trial court that under no circumstances in criminal
   matters could jurors ask questions of the witnesses was error.

3. WITNESSES—JURY—QUESTIONING WITNESSES—DISCRETION.
   The questioning of witnesses by jurors, and the method of submis-
   sion of such questions, rests in the sound discretion of the trial
   judge who may permit such questioning if he wishes.

Appeal from Court of Appeals, Division 1, V. J.
Brennan, P. J., and Fitzgerald and Levin, JJ.,
affirming the Recorder's Court of Detroit, Joseph
A. Gillis, J. Submitted June 6, 1972. (No. 3 June
Term 1972, Docket No. 53,519.) Decided August 30,
1972.

31 Mich App 439 reversed.

Robert Heard, Jr., was convicted of first-degree
murder. Defendant appealed to the Court of Ap-
peals. Affirmed. Defendant appeals. Reversed and
remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A.*

REFERENCES FOR POINTS IN HEADNOTES
[1] Am Jur, Trial § 36.
[2, 3] Am Jur, Trial § 852.

*Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Thomas N. Khalil,* Assistant Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *David A. Goldstein,* Assistant Defender), for defendant on appeal.

SWAINSON, J. Defendant was tried before a jury in the Recorder's Court for the City of Detroit on the charge of first-degree murder. He was found guilty and sentenced to life imprisonment. Defendant's counsel informed the jury in his opening statement that they had the right to ask questions of witnesses if they so desired, during the course of the trial. He further stated that they should write out these questions and that the trial judge had the right to limit the scope of the questions. The prosecutor objected to this statement and, after extended discussion, the trial judge stated that the jurors had no such right to submit questions to the witnesses.

At the conclusion of the trial, the judge, without obtaining counsels' permission, entered the jury room and delivered 21 exhibits to the jurors. Neither counsel, nor the jury, had requested that he do so. When the judge returned, defendant's counsel objected to this procedure. The Court of Appeals affirmed defendant's conviction. 31 Mich App 439. We granted leave to appeal. 385 Mich 787. In our grant of leave to appeal we limited the parties to two issues:

1. Whether the trial court committed reversible error by entering the jury room without the permission of counsel or request by the jury to deliver to the jury 21 exhibits?

2. Whether the trial court committed reversible error by ruling that jurors have no right to ask questions of witnesses?

In *Zaitzeff v Raschke,* 387 Mich 577 (decided June 20, 1972), our Court dealt with the issue of a trial judge entering the jury room. Speaking for a majority of the Court, Justice BLACK said (p 579):

"With what was written so plainly in 1961 for *Wilson v Hartley,* 365 Mich 188, concerning the indefensible practice of entering the jury room while the jurors are there, no matter by whom done, one would think that this Court had said enough to prevent what took place here. Yet the practice seems to go on, and on, and on, encouraged occasionally by 'no prejudice shown' conclusions of a group of Justices who cannot hope to know what was said, or done, or gestured, or hinted, in the sanctity of the jury room."

The facts in this case provide an even more compelling reason for preventing this type of action. In *Zaitzeff,* counsel for both parties agreed they did not need to be present when the jury returned its verdict (p 580). In a sense, they acquiesced to the action of the trial court, which we found to be reversible error. In the instant case, defense counsel strenuously objected, and neither counsel, nor the jury, had requested that the judge bring in these exhibits. On this issue the judgments of the Court of Appeals and of the trial court should be reversed.

The second issue is one of first impression in the State of Michigan. After defense counsel had stated that the jury did have a right to ask questions and the prosecutor had objected, the following discussion occurred between the court, defense counsel, and the prosecutor:

"*Mr. Lacey [assistant prosecuting attorney]:* I object,

your Honor; this is argument. It hasn't been a proper opening statement. Now Mr. Pillon is attempting to control the exercise of this courtroom in a manner which I have never seen.

*"The Court:* I was going to ask Mr. Pillon his authority on that. I've never heard of that before.

*"Mr. Lacey:* I've never heard of that.

*"Mr. Pillon [defendant's attorney]:* There's an English case on that.

*"The Court:* How old is it?

*"Mr. Pillon:* I don't know.

*"The Court:* Give me the citation. There's no case in the American jurisprudence to allow a juror to ask questions. I don't want a statement like that from any attorney.

*"Mr. Pillon:* I will put it right now on the record. I can see you and I are having a disagreement. When you are the trier of the fact, you ask questions of the witnesses. The jury has the same—

*"The Court:* This is a new theory of law in America.

*"Mr. Pillon:* I've done it before in Recorder's Court.

*"The Court:* Do you know any case anywhere in the United States—in the fifty states—or federal jurisdiction that permits this?

*"Mr. Pillon:* I will try and bring you back a citation after the lunch hour.

*"The Court:* I've never heard of it in my history of jurisprudence.

*"Mr. Pillon:* I will bring it back on the lunch hour. I have nothing further.

*"The Court:* All right. I will instruct the jury:

"As far as I know, you have no right to ask questions. I've never heard of it in my experience of law.

"The only thing I know of in certain types of civil cases there's a thing about special questions; but in criminal jurisprudence there is no such thing.

*"Mr. Pillon:* Is the Court going to instruct the jury they can not do it?

*"The Court:* I know no authority of that being done. I've never heard of it being done. I know no Court Rule or statute that permits it.

*"Mr. Pillon:* So I am not trying to belabor the point; so I don't misunderstand your ruling, you are barring the jury from doing that?

*"The Court:* I am saying the jury can not write out questions for the witnesses. It's never been done in this courtroom. It's never been done in the United States. It is not sustained by any authority that I know of in a criminal case.

*"Mr. Pillon:* I'll try to find a case and bring it to you.

*"The Court:* There is some procedure in condemnation cases—used to be—for the jury to ask questions, and other types of cases; but in criminal law there is no such procedure that I know of."

After the jury was dismissed and the parties had argued the defense motion to permit such questioning, the trial court denied the motion with the following statement:

"I will deny your motion as being within the discretion of the Court, and I will further say on the record there is no absolute right I can find in any case I can find in the United States that allows a juror to ask questions in a criminal case."

While less than half the states have spoken on this question, all but one have recognized the right of jurors to ask questions. These states include Arkansas *(Ratton v Busby,* 230 Ark 667; 326 SW2d 889; 76 ALR2d 751 [1959]); Florida *(Ferrara v State,* 101 So 2d 797 [Fla, 1958]); Indiana *(Carter v State,* 250 Ind 13; 234 NE2d 650 [1968]); New York *(Sitrin Brothers, Inc v Deluxe Lines, Inc,* 35 Misc 2d 1041; 231 NYS2d 943 [1962]); Pennsylvania *(Boggs v Jewell Tea Co,* 266 Pa 428; 109 A 666 [1920]); and *Reese v Pittsburgh,* 313 Pa 32; 169 A 366 [1933]).

The trial judge asserted that this had never been allowed in a criminal case, but he was incorrect in this statement. In *Carter v State, supra,*

defendant had been convicted by a jury of involuntary manslaughter. The trial judge stated in his preliminary instruction that none of the jurors was permitted to ask questions of any of the witnesses for either party, or their attorneys. The Indiana Supreme Court held on appeal that this was error. See, also, cases collected in 31 ALR3d 872.* The basic reason underlying the decisions of these Courts is that the jurors are the finders of fact and any questions they may ask may help them in reaching their ultimate determination. As the Oklahoma Court of Appeals stated in *Krause v State,* 75 Okla Crim 381, 386; 132 P2d 179 (1942):

"We think it proper that a juror may ask an occasional question where something has been said by a witness which is confusing to the juror for the purpose of clarifying the matter. The extent to which the trial court may allow such questioning by the juror is a matter in the discretion of the court."

The prosecutor contends that although many of the states have recognized the right of jurors to ask questions, these states have also discouraged this right. See, for example, *Ferrara v State, supra,* and *Shoultz v State,* 106 So 2d 424 (Fla, 1958).

We are dealing here with a very narrow issue. The trial judge in denying the motion misstated that there was no case which permitted this type of questioning. He ruled, erroneously, that under no circumstances in criminal matters, could jurors ask questions of the witnesses. We hold this view was error. The practice of permitting questions to witnesses propounded by jurors should rest in the sound discretion of the trial court. It would appear that in certain circumstances, a juror might have

---

* The Court of Appeals in its opinion relied on an earlier annotation found in 159 ALR 347.

a question which could help unravel otherwise confusing testimony. In such a situation, it would aid the fact-finding process if a juror were permitted to ask such a question. We hold that the questioning of witnesses by jurors, and the method of submission of such questions, rests in the sound discretion of the trial court. The trial judge may permit such questioning if he wishes, and we hold that it was error for the judge to rule that under no circumstances might a juror ask any questions.

The judgment of the Court of Appeals is reversed and the cause remanded for a new trial.

T. M. KAVANAGH, C. J., and ADAMS, T. E. BRENNAN, T. G. KAVANAGH, and WILLIAMS, JJ., concurred with SWAINSON, J.

BLACK, J., concurred in the result.